LAW OFFICES OF JOHN R. WALTON, P.C.
John R. Walton, Esq. (SBN 130666)
jwalton@waltonlawpc.com
George K. Rosenstock, Esq. (SBN 117515)
grosenstock@waltonlawpc.com
35 N. Lake Ave., Ste. 700
Pasadena, California 91101
Telephone: (626) 578-6000
Facsimile: (626) 578-6012

Attorneys for Plaintiff TriPharma LLC

RECEIVED
BUT NOT FILED

MAY 11 2012

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION
BY                    DEPUTY

FILED - SO...
CLER...
MAY 11 2012
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIPHARMA, LLC, a Delaware limited liability company,<br><br>              Plaintiff<br><br>vs.<br><br>FIRST FRUITS BUSINESS MINISTRY LLC, a South Carolina limited liability company; FIRST FRUITS BEVERAGE COMPANY LLC, a Delaware limited liability company; ROGER J. CATARINO, an individual, GREG GUSS, an individual; and Does 1-100,<br><br>              Defendants. | Civil Action No.<br>SACV12-00404 JST (ML Gx)<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. **Violation of False Marking Act (15 U.S.C. §292)**<br>2. **Violation of Lanham Act (15 U.S.C. §§ 1125 *et seq.*)**<br>3. **Declaratory Relief (18 U.S.C. §2201 *et seq.*)**<br>4. **Tortious Interference with Contract**<br>5. **Unjust Enrichment**<br>6. **California Business & Professions Code Section 17500, False Advertising**<br>7. **California Business & Professions Code Section 17200, Unfair Competition**<br><br>(JURY TRIAL DEMANDED) |

**FIRST AMENDED COMPLAINT**

## INTRODUCTION

1.     This action concerns Defendants' interference with Plaintiff's rights of exclusivity to distribute products covered by a method patent for which Plaintiff was granted an exclusive license.  Defendants also interfered with Plaintiff's exclusive rights to advertise and use clinical studies in connection with distributing the products.  The interference has taken the form of false advertising and unfair competition under federal and state law and tortious interference with Plaintiff's exclusive marketing agreement with the holder of rights under the patent.

## SUBJECT MATTER AND PERSONAL JURISDICTION

2.     Subject Matter Jurisdiction: This Court has subject matter jurisdiction over these patent and trademark claims under 35 U.S.C. Sections 100 *et seq.*, including, without limitation, 35 U.S.C. Section 292(b) ("False Marking"), 15 U.S.C. Sections 1114 and 1125(a), and 28 U.S.C. Section 1338(a).  This Court has federal question jurisdiction under 28 U.S.C. Sections 1331 and 1335.  This Court may exercise supplemental jurisdiction over the related state law claims.

3.     Personal Jurisdiction: This Court has personal jurisdiction over each of the defendants because, at all times relevant to this Complaint, (a) Defendants purposefully availed themselves of the privilege of conducting activities within this State by systematically and continuously directing their conduct at California residents, including Plaintiff, by distributing products in a manner that violates federal and state law, and interferes with Plaintiff's rights of exclusivity regarding distribution of such products; (b) Defendants directed their marketing and sales efforts to California residents through interactive internet websites to advertise and sell their products; (c) Defendant Greg Guss, Vice President of Sales and Marketing for Defendants First Fruits Ministry, LLC and First Fruits  Beverage Company, LLC, resides and conducts and furthers the business interests of the other Defendants from and in this District; (d) Defendants First Fruits Business Ministry, LLC and First Fruits  Beverage Company, LLC, by the  residence of Greg Guss,

1

1  Vice President of Sales and Marketing for Defendants First Fruits Business
2  Ministry, LLC and First Fruits  Beverage Company, LLC in this State (and in this
3  District) are systematically and continuously present in this State.

4          4.      Defendants knowingly and intentionally sought out a business
5  relationship with Imagenetix, a California business, and with knowledge of its
6  contractual relationship with Plaintiff, a California business in this District,
7  counseled, persuaded and induced Imagenetix to breach its contractual obligations
8  to Plaintiff.

9          5.      Defendants are regularly conducting substantial business activity
10  within this District, including by marketing themselves and their images, by
11  soliciting customers, and by and through other selling and marketing activities,
12  including but not limited to appearances on a nationally televised network, the use
13  of print copy materials, embedded marketing videos and interactive internet
14  websites that are accessible and in fact accessed by citizens residing in California
15  and in this district.

## VENUE

16
17          6.      Venue:  Venue is proper in this Court under 28 U.S.C. Sections
18  1391(b), 1391(c), 1395 and 1400(b), because defendants are conducting substantial
19  business activities within this District, and because a substantial part of the events
20  and omissions giving rise to the claims for relief occurred within this District, and
21  because one of the Defendants, Greg Guss, resides in this District.

## PARTIES

22
23          7.      Plaintiff TriPharma, LLC ("TriPharma") is and was at all times
24  relevant to this action a limited liability company organized and existing under the
25  laws of the State of Delaware with its principal place of business at 1278
26  Glenneyre, Suite 285, Laguna Beach, California.  At all times relevant to this
27  action, TriPharma was authorized to conduct and was in fact conducting business in
28  California.

**FIRST AMENDED COMPLAINT**

8.     Defendant First Fruits Business Ministry, LLC is a limited liability company organized and existing under the laws of the State of South Carolina ("FF Business") with its principal place of business in Leaning Tree, South Carolina.

9.     Defendant First Fruits Beverage Company, LLC ("FF Beverage") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 211 Washington Avenue, Marion, Virginia.

10.    Plaintiff is informed and believes and on that basis alleges that Defendant Greg Guss is an individual residing in Thousand Oaks, California. Plaintiff is further informed and believes and on that basis alleges that Defendant Greg Guss is Vice President of Sales and Marketing for Defendant FF Beverage, personally directs and participates in the wrongful sales and marketing activities described below, and that he does so despite having actual knowledge of TriPharma's rights by virtue of having previously worked for TriPharma.

11.    Plaintiff is informed and believes and on that basis alleges that Defendant Roger J. Catarino is an individual residing in Columbia, South Carolina. Plaintiff is further informed and believes and on that basis alleges that Mr. Catarino is the President and Chief Executive Officer of FF Beverage and FF Business. Catarino had first-hand knowledge of TriPharma's rights and its contract with Imagenetix through, inter alia, communications with TriPharma and Imagenetix.

12.    TriPharma is informed and believes, and on that basis alleges, that some or all of the individual Defendants conspired with and/or aided and abetted other Defendants, were at all times relevant hereto controlling persons, agents, and/or alter egos of each of the other Defendants, and in doing the acts as herein alleged, were acting within the course and scope of their authority as such with the expressed and implied permission, instruction, knowledge, consent, and ratification of each other Defendant.  Plaintiff is informed and believes and on that basis alleges that some or all of such Defendants did influence and govern other Defendants with

1    such a degree of unity of interest and ownership so that the individuality, and/or

2    separateness, of such Defendants have ceased to exist, and there was such a unity of

3    interest and absence of real distinction that adherence to the fiction of FF Beverage

4    and/or FF Business's separate existence as corporate entities would sanction a fraud

5    and promote injustice.

6        13.    TriPharma further alleges on information and belief that the

7    Defendants Catarino and some of Does 1-100 are the alter egos of FF Beverage

8    and/or FF Business, and that the obligations of FF Beverage and/or FF Business as

9    set forth in the claims for relief are also the obligations of those Defendants in that

10   (a) FF Beverage and/or FF Business are influenced and governed by such

11   Defendants; (b) FF Beverage and/or FF Business were at all material times herein

12   corporate instrumentalities used for the benefit of such Defendants; (c) the

13   Defendants personally directed and participated in the wrongful conduct alleged

14   against FF Beverage and/or FF Business; (d) the corporate form, entity, and

15   structure of FF Beverage and/or FF Business were at all times disregarded by such

16   Defendants; and (e) there was such a unity of interest and absence of real

17   distinction that adherence to the fiction of FF Beverage and/or FF Business's

18   separate existence as corporate entities would sanction a fraud and promote

19   injustice.

20       14.    The true names and capacities, whether individual, corporate, associate

21   or otherwise of the Defendants named herein as DOES 1 through 100, inclusive, are

22   unknown to TriPharma at this time, who therefore sue DOES 1 through 100 by

23   fictitious names and will ask leave of the Court to amend this Complaint to show

24   the true names and capacities of DOES 1 through 10 when the same are ascertained.

25   DOES 1 through 10 are sued as principals and/or agents, servants, attorneys, and

26   employees of said principals, and all the acts performed by them were within the

27   course and scope of their authority and employment.  TriPharma is informed and

28   believes and thereupon alleges that each of DOES 1 through 100 is legally

1  responsible in some manner for the events and happenings referred to herein, and

2  directly and proximately caused the damages and injuries to TriPharma as

3  hereinafter alleged.

## THE PATENT AT ISSUE

5      15.    TriPharma is the exclusive licensee to distribute products based upon

6  United States Patent and Trademark Office Patent No. 6,899,892, entitled "Methods

7  to Reduce Body Fat," issued on May 31, 2005 to the Regents of the University of

8  Minnesota ("UMinn"), for reducing the percentage of body fat in a mammal and the

9  level of leptin in the bloodstream of the mammal (the "892 Patent").

10      16.    The 892 Patent is a "method" or "process" patent, and not a

11  "composition of matter" patent.  As such the 892 Patent does not purport to patent

12  "an ingredient" or combination of ingredients or an intermixture of two or more

13  ingredients to create a compound. Instead as a "method" or "process" the 892

14  Patent sets forth a series of steps and acts for performing a function or

15  accomplishing a result.  An accurate copy of the 892 Patent is attached as

16  **Exhibit A** and incorporated by reference.

17      17.    The 892 Patent performs a function and accomplishes a result by

18  administering a range of amounts of certain viscous polysaccharides for a range of

19  periods of time sufficient to lower serum levels of leptin and the percentage of body

20  fat in mammals, including humans.  See, **Exhibit A**, Column 6, line 44 to Column

21  7, line 37.  Leptin is a signaling hormone secreted by fat cells.  It regulates body fat

22  storage through the central nervous system by modulating satiation, appetite,

23  glycemic control, and metabolism.  Leptin is also a mediator of long-term

24  regulation of energy balance, suppressing food intake and thereby inducing weight

25  loss.

26      18.    Products falling within the claims of the 892 Patent are referred to

27  herein as "892 Products"; however, there is no singular compound, admixture,

28  recipe, or formula for such 892 Product.  The viscous polysaccharides can be

1    administered in a variety of ways, including in an applesauce, a cereal, a cookie, a

2    cracker, a flavored drink, a fruit juice, an ice cream, a milk shake, a pudding or a

3    snack bar.  See, **Exhibit A**, at Column 17, Claim No. 26.  The 892 Patent applies to

4    "[a]ny water-soluble, non-nutritive, indigestible, non-starch, viscous polysaccharide

5    available to one of skill in the art can be used in the compositions, processes and

6    methods of the 892 invention."  See, **Exhibit A**, at "Detailed Description of the

7    Invention", column 4.

8                                    **SUMMARY OF THE CASE**

9           19.    This case arises out of a scheme to, falsely advertise and label the

10   consumer beverage TrimFit as the 892 Product which was tested under those

11   certain studies conducted at the University of Connecticut ("UConn"), University of

12   Minnesota, and published in the European Journal of Applied Physiology

13   (collectively, "the Studies").  TriPharma has the exclusive right to sell, to market

14   and to distribute any products which are based upon the 892 Patent, and has the

15   exclusive right to refer to and to utilize the Studies to sell, market and distribute the

16   892 Product.  The Defendants continue to distribute the 892 Product with no right

17   to sell, to market or to distribute the 892 Product in any form or to utilize the

18   Studies in connection therewith.

19          20.    This case also arises out of a scheme to circumvent a state court

20   judgment entered April 27, 2012, confirming an arbitration award which found

21   Imagenetix, the licensor of rights under the 892 Patent to Plaintiff, had massively

22   violated TriPharma's rights of exclusivity to distribute the 892 Product as supported

23   by the Studies.

24          21.    The Arbitrator having enjoined Imagenetix from continuing to violate

25   TriPharma's rights of exclusivity regarding the 892 Product as outlined above,

26   Imagenetix now attempts to circumvent the injunction by simply selling its rights to

27   the 892 Patent to Defendant FF Business, ignoring that Plaintiff's rights of

28   exclusivity "run with the 892 Patent" by law, and the reality that Imagenetix could

**FIRST AMENDED COMPLAINT**

1    not sell what it did not own, namely, the rights of exclusivity to distribute and use

2    the Studies to promote the sale of the 892 Product previously granted to Plaintiff.

3          22.    To consummate this unlawful scheme, Defendants are now actively

4    using internet websites and other marketing techniques such as video presentations

5    on websites to falsely advertise en masse that Defendants have the exclusive right

6    to distribute the 892 Product and further falsely advertise that Defendants'

7    infringing product, TrimFit, contains a "patented ingredient" and was the subject of

8    the Studies.

9          23.    Defendants have no right to use the Studies in connection with the

10   sale, marketing and distribution of TrimFit or any other form of the 892 Product.

11         24.    TriPharma neither sponsors nor approves either the use of the Studies

12   or the distribution of the 892 Product by the Defendants.

13         25.    FF Beverage's and FF Business's executives' conduct as alleged

14   herein constitutes violation of federal law and the laws of the State of California as

15   set forth herein, including laws prohibiting false advertising, unfair competition,

16   and unjust enrichment.  As a result of FF Beverage and FF Business's executives'

17   conduct, TriPharma has suffered and will continue to suffer irreparable injury and

18   accordingly brings this action for restitution and monetary and injunctive relief.

## ACTS GIVING RISE TO CLAIMS FOR RELIEF

### TriPharma's Rights of Exclusivity

21         26.    TriPharma was a well-established, recognized company that possessed

22   and possesses exclusive rights to distribute the 892 Product and use the Studies and

23   associated trademarks in connection therewith.  TriPharma has the right to further

24   sublicense rights to distribute the 892 Product and use the Studies and associated

25   trademarks in connection therewith.

26         27.    The 892 Patent was originally the subject of an exclusive license from

27   UMinn (as patent holder) to Imagenetix, a Nevada corporation licensed to conduct

28

1   business in the State of California with its principal place of business in San Diego,

2   California.

3        28.    Imagenetix in turn, granted TriPharma the right to hold itself out as the

4   sole exclusive and authorized distributor of the 892 Product, and to have the right to

5   use trademarks and logos in advertisements and other activities conducted by

6   TriPharma to promote the sale of the 892 Product. An accurate copy of the

7   Amended and Restated Exclusive Marketing and Supply Agreement between

8   TriPharma and Imagenetix (and thereafter amended) by the parties (collectively the

9   "Exclusive Marketing Agreement") is attached as **Exhibit B**.

10        29.    Imagenetix granted TriPharma "an irrevocable license to exclusively

11   utilize the Patents, marketing claims and studies or clinical information conducted

12   on and for the Product." **Exhibit B**, Par. 1.6.  Under the Exclusive Marketing

13   Agreement TriPharma is granted an exclusive license to market, distribute and sell

14   the 892 Product. The Exclusive Marketing Agreement dated October 1, 2007 is for

15   a term of five years and is "automatically renew[able]" absent timely written notice

16   of non-renewal892 Product.

17        30.    The exclusivity provisions were strictly worded utilizing mandatory

18   terms.  They provided that Imagenetix "shall not appoint any distributor or servicer

19   for the Product other than TRIPHARMA; (b) shall not, and shall cause any Affiliate

20   not to sell ... any Product to any person other than TRIPHARMA ... for use or

21   resale; and (c) shall use its best efforts to prevent any party other than

22   TRIPHARMA from seeking customers for the Product, from establishing any

23   branch related to the distribution of the Product, or from maintaining any

24   distribution depot with respect to the Product." See, **Exhibit B**, par. 1.1

25        31.    Pursuant to the Exclusive Marketing Agreement, Imagenetix reserved

26   to itself none of the patent rights acquired from UMinn except for the right to sell

27   exclusively to TriPharma the 892 Product, which TriPharma was obligated to

28   purchase from Imagenetix.  As explained below, however, Imagenetix subsequently

1    attempted to disqualify itself from fulfilling that role, such that it has no remaining

2    interests under the Exclusive Marketing Agreement, as part of a carefully

3    orchestrated plan to deprive Plaintiff of its rights of exclusivity.

**TriPharma Develops Goodwill In 892 Product and Trademarks**

5         32.    In exercising its rights under the Exclusive Marketing Agreement,

6    TriPharma distributed private label products XelleX™, a registered trademark of

7    TriPharma. XelleX™ is comprised of the same ingredients as the 892 Product.

8    TriPharma also launched SoLeau™ (a registered trademark of TriPharma), the

9    world's first weight loss water that contained efficacious doses of the 892 Product.

10        33.    As a result of the Studies, and the successes of the 892 Product

11   facilitated by TriPharma's exclusive efforts, professional and consumers in the diet

12   supplement industry regularly associated XelleX™, SoLeau™ with the Studies.

13        34.    To exploit its rights of exclusivity, TriPharma identified potential

14   licensees in several sales and distribution channels, including without limitation,

15   Direct Response Television, Direct Response Radio and Retail industries for the

16   892 Product.

17        35.    TriPharma expended significant efforts and resources over the years to

18   promote, advertise and use the 892 Product so as to make the 892 Product and the

19   patent and trademarks associated with it highly recognizable and distinguished to

20   the consuming public.  TriPharma's diligence has resulted in the public readily

21   identifying products utilizing the Studies as originating from a source sponsored,

22   affiliated or connected with TriPharma and the trademarks associated with it

23   including filing this action and the action against Imagenetix further described

24   below.

25        36.    The amount of goodwill TriPharma had amassed in connection with

26   the 892 Product and the trademarks and Studies associated with it as a result of its

27   diligence and expended resources is enormous.  TriPharma also has dedicated

28   significant amounts of time and resources to promoting the 892 Product and the

9

**FIRST AMENDED COMPLAINT**

1   patent and trademarks associated with it and to protecting its exclusive right to

2   distribute the 892 Product.

3      37.    As described below, FF Beverage, FF Business, Catarino, and Guss's

4   conduct has made it impossible for TriPharma to effectively exploit its rights of

5   exclusivity and/or to garner commitments from other companies who could and

6   would market and distribute the 892 Product or to otherwise commercially exploit

7   its exclusivity rights in the Studies or Trademarks.

8                  **The Federal Action and Arbitration Award**

9      38.    On April 30, 2010, TriPharma sued Imagenetix, alleging, inter alia,

10   violations of the parties' license agreement. Arbitration was undertaken to resolve

11   these disputes, including TriPharma's claims of breach of the Exclusive Marketing

12   Agreement and Imagenetix's claims of non-exclusivity.  Testimony was taken in

13   July and August, 2011 before the Hon. Terry Friedman of JAMS ("Arbitrator") in

14   San Diego.

15      39.    The Arbitrator issued his interim award on September 12, 2011,

16   confirming Imagenetix's massive breaches of the Exclusive Marketing Agreement

17   and re-confirming the broad exclusive rights granted to TriPharma under the

18   Exclusive Marketing Agreement, 892 Patent and the Studies.

19      40.    On November 2, 2011, the Arbitrator issued his final award in favor of

20   TriPharma (the "Final Arbitration Award"), denying Imagenetix's claims and

21   finding the massive violations as expressed above to exist.  In addition to awarding

22   damages, punitive damages, costs and attorneys fees of approximately $4 million to

23   TriPharma, the award confirmed that the Exclusive Marketing Agreement granted

24   TriPharma "an exclusive sublicense to market, sell and distribute any and all

25   products covered by the 892 Patent and the UConn clinical study, to the exclusion

26   of all others."  An accurate copy of the Final Arbitration Award is attached as

27   **Exhibit C**.  On or about March 5, 2012, that award was confirmed in all respects

28

1   by the Superior Court for the County of San Diego.  On April 27, 2012 judgment

2   was entered on the Award.

3        41.    The Final Arbitration Award thereby came out in TriPharma's favor

4   and rejected all of Imagenetix's claims, including the claim that it had effectively

5   terminated TriPharma's Exclusive Marketing Agreement.

6        42.    Since the Final Arbitration Award, Imagenetix has failed and refused

7   to supply product to TriPharma under the Exclusive Marketing Agreement,

8   claiming that its assignment of the 892 Patent to FF Business legally precludes it

9   from honoring its contract with TriPharma.

10   <u>**Defendants' Secret Dealings**</u>

11        43.    In November 2011, Imagenetix filed an unsuccessful motion to vacate

12   the arbitration with the United States District Court for the Southern District of

13   California and subsequently unsuccessfully opposed TriPharma's Petition to

14   Confirm the Final Arbitration Award which was confirmed in all respects and

15   reduced to judgment on April 27, 2011 in San Diego Superior Court.

16        44.    As part of Imagenetix's attempts to prevent the Final Arbitration

17   Award from being confirmed and reduced to judgment, it filed the Declaration of

18   defendant Roger Catarino, an accurate copy of which is attached as **Exhibit D.**

19        45.    Catarino asserts under penalty of perjury that in order to fulfill FF

20   Beverage and/or FF Business's desire to "acqui[re] patent rights to a weight loss

21   product to be used in a consumer beverage and for other, commercial purposes," he

22   personally negotiated for the purchase of the 892 Patent from Imagenetix.

23        46.    Catarino declares that in early 2011, he reached agreement with

24   Imagenetix for Imagenetix to acquire the patent and then transfer it to FF Beverage

25   and/or FF Business in order to provide FF Beverage and/or FF Business with "full

26   ownership of the '892 Patent and all rights relating to that patent".

27

28

47.     Catarino declares that on March 1, 2011 Imagenetix acquired the 892 Patent for that purpose, and that on March 7, 2011, Imagenetix assigned the 892 Patent to FF Business pursuant to the agreement.

48.     Catarino declared that FF Business claimed to be unaware of any "legal impediment to Imagenetix assigning exclusive rights to the '892 Patent to First Fruits".

49.     Catarino declared that "[o]nce Imagenetix sold the '892 Patent to First Fruits Business Ministry, LLC in March, 2011, Imagenetix no longer had the legal right to manufacture and sell TriPharma [sic] the weight loss product covered by the '892 Patent". He further stated that "[i]f, on the other hand, TriPharma decided to obtain the raw materials and manufacture and distribute the weight loss product on its own, it would violate and infringe upon First Fruits' exclusive Federal patent rights under the '892 Patent, since only First Fruits Business Ministry, LLC has the right to manufacture and distribute the patented weight loss product."

50.     In early summer 2011, TriPharma heard that Imagenetix had purchased the 892 Patent from UMinn, reportedly with money provided by FF Beverage and its financial backers. FF Beverage, however, falsely denied the claim. Specifically, on June 27, 2011, Heather Redmond, a partner at Dorsey & Whitney and counsel for FF Beverage, wrote:

> Your email accuses First Fruits of breaching agreements
> with TriPharma (that did not yet exist) and of interfering
> with some unidentified 'business affairs' between Bill
> Spencer [Principal of Imagenetix] and TriPharma. **First**
> **Fruits did not know that Imagenetix had acquired the**
> **patent until we received your email.** Neither First
> Fruits nor its investor financed that acquisition."
> (emphasis added)

**FIRST AMENDED COMPLAINT**

51.   On July 28, 2011, immediately prior to the close of taking evidence at the TriPharma-Imagenetix arbitration (and after it was abundantly clear that Imagenetix had lost its claim of having terminated the Exclusive Marketing Agreement with TriPharma), FF Business first publically recorded with the USPTO the assignment of the 892 Patent from Imagenetix to FF Business, which it had actually purchased in March 2011.

## **Defendants' Willful Violation of TriPharma's Rights of Exclusivity and Intellectual Property**

52.   Beginning in July, 2011, Defendants rolled out their plan to take up where Imagenetix left off, and continue to massively violate TriPharma's rights of exclusivity as found by the Arbitrator.

53.   On information and belief, beginning in July, 2011, Defendants sold and continue to sell a liquid beverage form of the 892 Product branded as "TrimFit" which Defendants caused to be bottled using the 892 Product without any right or authority to do so and have continued to utilize the Studies of the 892 Product, without any right or authority to do so.

54.   For example, Defendants have been misappropriating and continue to misappropriate TriPharma's intellectual property by labeling the containers in which TrimFit are sold nationally as imprinted with the number of the 892 Patent with the intent of deceiving the public that TrimFit is a patented product and/or that TrimFit contains a composition of matter patented ingredient, both of which are knowingly false, and as part of a carefully orchestrated plan to violate TriPharma's rights of exclusivity as outlined above.

55.   The TrimFit label also falsely claims that its effectiveness is confirmed by "clinical studies" and that that those "clinical studies" dictate that consumers should drink three bottles per day for best results.   This statement is deceptive and misleading as no clinical studies have used TrimFit as the subject matter of a study.

13

**FIRST AMENDED COMPLAINT**

56.     Defendants are making and continue to make false and deceptive statement on their websites regarding TrimFit including use and reference to studies conducted by the University of Minnesota and University of Connecticut when in fact TrimFit was not the subject of such studies.

57.     Defendant Roger Catarino personally appeared on two segments of a nationalized television program carried on the Lifetime Television Network entitled "The Balancing Act" to promote and advertise the purported weight loss water, TrimFit. He was verbally and visually identified as "President and CEO of FFB" in a legend appearing beneath his image. ("Catarino Video").

58.     In the Catarino Video Catarino personally falsely states that TrimFit was the subject of the Studies.

59.     In the Catarino Video Catarino falsely states TrimFit is a patented ingredient.

60.     Catarino's video statements constitute a "use in advertising" of the word "patent" for the specific purpose of deceiving the public.

61.     Despite the fact that TrimFit is not comprised of a "patented ingredient" nor of the same ingredients which were the subject matter of the Studies, Defendants have continued to market TrimFit to use the Studies in promoting TrimFit falsely representing to consumers and the general public that TrimFit was the subject matter of the Studies including statements in the Catarino Video by Catarino as follows:

> "The University of Minnesota took 7 years working and receiving the patent, which we have purchased from them. The proprietary formula that we developed, the Trisynex, then we studied it in clinical studies at the University of Connecticut. And the results were amazing. The people, the women, who were on the active ingredient in 8 weeks lost an average of 20 pounds and 17 percent body fat and inches around the waist, buttocks and thighs."

**FIRST AMENDED COMPLAINT**

62.     Mr. Catarino had objective standards from which to know that TrimFit was not and is not a patented ingredient, that TrimFit is not a formulation which conforms to a composition of matter patent, and that by the use of the phrase "patented ingredient" he was knowingly deceiving the public.

63.     The objective information known to Mr. Catarino from which intent to deceive is inferred includes that the 892 patent was a method or process patent and not a composition of matter patent, that the 892 patent does not reference nor otherwise make any independent or dependent claim that there is a composition of matter patent from which a "patented ingredient" claim can be made as associated with any product based upon the 892 Patent, including TrimFit.

64.     The Catarino Video which includes the above statements was subsequently embedded in the interactive website of TrimFit and has been systematically and continuously available for viewing 24/7 on the world wide web from July, 2011 until the filing of this First Amended Complaint.

65.     The Catarino Video was also subsequently embedded as videos in the interactive website of the Lifetime Network and has been systematically and continuously available for viewing 24/7 on the world-wide web from July, 2011 until the filing of this First Amended Complaint.

66.     The referenced Lifetime Television network segments were broadcast to the entire United States, including California, and including this District, via satellite through the commercial carriers DirecTV (Channel 252) and Dish Network (Channel 108).

67.     The Catarino Video was broadcast by Lifetime Television network via DirecTV and Dish Network to all persons subscribed to DirecTV and Dish Network in this District whose subscriptions included Channels 252 and 108, respectively.

68.     Through the Catarino Video, Catarino, speaking as the identified President and CEO of FF Business, has continued to market TrimFit as a patented

15

**FIRST AMENDED COMPLAINT**

1   product with specific intent to deceive the public and as embodied by the 892

2   Patent under the trademark "TrimFit."

3        69.    On information and belief, Defendants also arranged to have TrimFit

4   featured on the popular television program "Biggest Loser," an NBC program.  In

5   the program, contestants compete at losing weight.  On information and belief,

6   Defendants participated in the filming and creation of such program and the

7   featuring of TrimFit, including their false claims about its nature, history, and

8   clinical studies, and that such acts took place in substantial part within the Central

9   District of California.  On information and belief, the relevant episodes of the

10  Biggest Loser are scheduled to air sometime in 2012.

11       70.    Defendants are falsely marking TrimFit by using the word "patent" in

12  advertising to deceive the public by creating the false and misleading impression

13  that TrimFit is a patented product whereas it is not a patented product,  trading

14  intentionally and wrongfully on the 892 Patent, the Studies, and the reputation and

15  goodwill of TriPharma and the 892 Product by falsely advertising and marketing to

16  the general public TrimFit as being subject to exclusive patent rights in FF

17  Beverage and/or FF Business.  Defendants intentionally are using the 892 Product,

18  the reference to the 892 Patent and the Studies without TriPharma's permission and

19  in a manner that is likely to deceive, confuse and mislead the public as to the

20  affiliation, sponsorship and/or connection of the Studies, 892 Patent, and the 892

21  Product with TrimFit.

22       71.    Defendants' conduct as alleged herein constitutes false marking, false

23  advertising in violation of federal law, and also constitutes tortious interference

24  with contractual relations, false advertising and unfair competition under the laws

25  of the State of California as set forth herein.  As a result of Defendants' conduct,

26  TriPharma has suffered and will continue to suffer irreparable and competitive

27  injury and accordingly brings this action for restitution and monetary and injunctive

28  relief.

# FIRST COUNT

Violation of 15 U.S.C. § 292 [False Marking and Injunctive Relief]

(TriPharma Against All Defendants and Does 1-100)

72.    TriPharma incorporates paragraphs 1 through 71 in support of this claim for relief.

73.    Defendants and each of them have marked and used in advertising in connection with its allegedly proprietary but unpatented product, TrimFit, the word "patent" and similar words to convey the intentionally false and misleading assertion to the public that TrimFit is a composition of matter or otherwise patented product for the specific purpose of deceiving the public in violation of 35 U.S.C. Section 292(a).

74.    As a direct and proximate result of the aforesaid violation of 35 U.S.C. Section 292(a) Plaintiff suffered, and continues to suffer, a competitive injury.

75.    The false statements actually deceived and/or had the tendency to deceive a substantial segment of Defendants' intended audience. The deception was material, in that it was likely to influence the consumers' purchasing decisions.

76.    Defendants caused the false statements to enter interstate commerce.

77.    TriPharma and consumers have been or are likely to be injured as a result of the false statements either by a direct diversion of sales from TriPharma to Defendants or by a lessening of the goodwill associated with TriPharma's products.

78.    As a direct and proximate result of Defendants' conduct, TriPharma has been harmed in an amount according to proof, and will suffer further, irreparable injury unless the requested relief is granted.

79.    TriPharma is also entitled to injunctive relief to enjoin Defendants from the actions identified herein regarding the continued marketing, advertising, distribution, and sales of TrimFit and use of the word "patent" in advertising to deceive the public.

## SECOND COUNT

Violation of 15 U.S.C. §1125, et seq. [False Advertising,

False Designation of Origin, Unfair Competition and Injunctive Relief]

(TriPharma Against All Defendants and Does 1-100)

80.     TriPharma incorporates paragraphs 1 through 79 in support of this claim for relief.

81.     Defendants' conduct as alleged herein constitutes false advertising, false designation of origin and unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. Section 1125(a).

82.     The false statements actually deceived and/or had the tendency to deceive a substantial segment of Defendants' intended audience.  The deception was material, in that it was likely to influence the consumers' purchasing decisions.

83.     Defendants caused the false statements to enter interstate commerce.

84.     TriPharma has been injured as a result of the false statements either by a direct diversion of sales from TriPharma to Defendants or by a lessening of the goodwill associated with TriPharma's products.

85.     As a direct and proximate result of Defendants' conduct, TriPharma has been harmed in an amount according to proof, and will suffer further, irreparable injury unless the requested relief is granted.

86.     Defendants' conduct as alleged herein was intentional, willful, wanton, malicious, oppressive and reckless, thus warranting enhanced and/or treble damages and attorneys' fees pursuant to 15 U.S.C. Section 1117(a).

87.     TriPharma is also entitled to injunctive relief to enjoin Defendants from the actions identified herein.

## THIRD COUNT

Declaratory Relief

(TriPharma Against Defendants FF Beverage and FF Business)

88.     TriPharma incorporates paragraphs 1 through 87 in support of this claim for relief.

89.     A dispute has now arisen between the Plaintiff and each and all of the Defendants ("Parties") regarding the respective rights of each of the Parties. TriPharma contends that it still holds and maintains all rights granted to it pursuant to the Exclusive Marketing Agreement, including but not limited to the exclusive rights to market and sell in North America products covered by the 892 Patent, as well as to use the UConn Studies as advertising for such products, whereas Defendants contend that FF Business's acquisition of the 892 Patent gave it and its affiliates such rights to the exclusion of TriPharma.

90.     A judicial declaration is therefore required declaring that: (1) Defendants have no right to continue to market, advertise, distribute and sell the Product in derogation of TriPharma's rights under the Exclusive Marketing Agreement; (2) Defendants have no right to continue to use the UConn Studies in support of the efficacy of the Product; and (3) TriPharma is entitled to be compensated by Defendants for the wrongful distribution of TrimFit and the wrongful use of the UConn Studies.

## FOURTH COUNT

Tortious Interference with Contractual Relations and Injunctive Relief

(TriPharma Against All Defendants and Does 1-100)

91.     TriPharma incorporates paragraphs 1 through 90 in support of this claim for relief.

92.     As confirmed by the Final Arbitration Award, the Exclusive Marketing Agreement between TriPharma and Imagenetix was a valid and existing contract at all times material herein to the present.

1         93.    Defendants had actual knowledge of the existence of such contract and

2    its material terms.

3         94.    Defendants intended to disrupt the performance of the Exclusive

4    Marketing Agreement.

5         95.    Defendants' conduct prevented performance by Imagenetix and/or

6    TriPharma or, alternatively, made performance more expensive or difficult.

7         96.    TriPharma has suffered damages from the interference with its

8    contractual relations, in an amount subject to proof.

9         97.    Defendants' conduct was a substantial factor in causing TriPharma's

10   harm.

11        98.    In engaging in the acts of interference, Defendant Catarino, an officer,

12   director and managing agent of Defendants FF Beverage and FF Business acted

13   willfully, with fraud in lying to TriPharma about its actual purchase of the 892

14   Patent, with malice toward TriPharma based on its anger that TriPharma's dispute

15   with Imagenetix jeopardized its own license rights from TriPharma, and motivated

16   by a desire to oppress TriPharma by seeking to leave TriPharma without an

17   effective remedy against an insolvent Imagenetix after the arbitration, while

18   Defendants themselves reaped the "fruit" of TriPharma's hard-won rights and years

19   of R&D effort.  As such, TriPharma is entitled to an award of exemplary damages

20   against Mr. Catarino, personally, and against FF Beverage and FF Business

21   pursuant to California Civil Code Section 3294.

22        99.    TriPharma is also entitled to injunctive relief to enjoin Defendants

23   from the actions identified herein regarding the continued marketing, advertising,

24   distribution, and sales of TrimFit.

25        100.   Defendants have intentionally or negligently interfered with

26   TriPharma's future and prospective sales and have attained ill-gotten profits from

27   the marketing and distribution of TrimFit using unfair, deceptive and fraudulent

28   business activities as alleged herein.  These acts have caused and, unless restrained

1   by this Court by a preliminary injunction and permanent injunction, will continue to

2   cause TriPharma to suffer irreparable injury.

3        101.   Defendants intentionally or negligently interfered with TriPharma's

4   future and prospective sales and have attained ill-gotten profits from the marketing,

5   advertising and sale of TrimFit and/or Trisynex.  These acts have caused and,

6   unless restrained by this Court by a preliminary injunction and permanent

7   injunction, will continue to cause TriPharma to suffer irreparable injury.

8        102.   TriPharma has no adequate remedy at law.  Damages at law are

9   inadequate.  TriPharma therefore seeks injunctive and/or other appropriate

10   equitable relief from this Court.

11                          **FIFTH COUNT**

12                          Unjust Enrichment

13            (TriPharma Against All Defendants and Does 1-100)

14        103.   TriPharma incorporates paragraphs 1 through 102 in support of this

15   claim for relief.

16        104.   Defendants' conduct as alleged herein constitutes unjust enrichment

17   under the laws of the State of California.

18        105.   As a direct and proximate result of Defendants' conduct, TriPharma

19   has been harmed in an amount according to proof, and will suffer further,

20   irreparable injury unless the requested relief is granted.  Accordingly, TriPharma

21   demands that a constructive trust be imposed for TriPharma's benefit on all

22   revenues derived from the sale of TrimFit and/or Trisynex.

23        106.   Defendants 'conduct as alleged herein was intentional, willful, wanton,

24   malicious, oppressive, and reckless, thus warranting enhanced and punitive

25   damages.

26

27

28

## SIXTH COUNT.

California Bus. & Prof. Code Section 17500

(TriPharma Against All Defendants and Does 1-100)

107.   TriPharma incorporates paragraphs 1 through 106 in support of this claim for relief.

108.   California Business and Professions Code Section 17500 et seq. prohibits the making or disseminating or actions that caused to be disseminated before the general public in the State of California in any promotional materials and advertisements any statement regarding a consumer product that are untrue, deceptive, unfair or misleading.

109.   Defendants made, disseminated and/or caused to be disseminated before the general public in this state, promotional materials and advertisements containing statements regarding a consumer product that are untrue, deceptive, unfair or misleading, thus causing members of the public to be deceived.

110.   As a result of such labeling, promotional materials and advertisements, used for the sale of TrimFit, that TrimFit is not a patented ingredient, does not contain a patented ingredient, was not the subject of studies by the University of Minnesota or Connecticut and would not have been recognized by a reasonably prudent consumer or user, including members of the public for whom the product was intended.

111.   As a result of the conduct alleged above, the Defendants have been and will be unjustly enriched at the expense of the consuming public.  Specifically, they have been unjustly enriched by receipt of profits from the wrongful sales of TrimFit in California, throughout the United States, which were sold through advertisements and marketing which affirmatively misrepresents the nature and efficacy of TrimFit.

112.   Pursuant to Section 17203 of the California Business and Professions Code, TriPharma seeks an order from the Court requiring Defendants to disgorge all ill-gotten profits and awarding TriPharma restitution of all profits wrongfully acquired by them by means of such false advertising, which has resulted in TriPharma's inability to market its products or the 892 Product.  TriPharma additionally requests that such funds be impounded by the Court or that an asset freeze or constructive trust imposed upon such revenues and profits to avoid dissipation and/or fraudulent transfers or concealment of such monies by the Defendants.

113.   Pursuant to Section 17535 of the California Business and Professions Code, TriPharma seeks an order of this Court requiring Defendants to disgorge all ill-gotten profits and awarding TriPharma full restitution of all profits wrongfully acquired by them by means of such  false advertising, plus interest and attorneys' fees pursuant to Section 1021.5 of the California Code of Civil Procedure, so as to restore any and all monies to TriPharma which were acquired and attained by means of such untrue and misleading advertising, and which ill-gotten gains are still retained by Defendants.  TriPharma may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.  TriPharma also requests an injunction ordering that Defendants and their agents, employees, servants, representatives, successors in interest, to refrain from the conduct set forth herein.

## SEVENTH COUNT

California Bus. &Prof. Code Section 17200

(TriPharma Against All Defendants and Does 1-100)

114.   TriPharma incorporates paragraphs 1 through 113 in support of this claim for relief.

**FIRST AMENDED COMPLAINT**

115.    Defendants engaged in unfair, unlawful and/or fraudulent business practices and such conduct as alleged herein constitutes unfair competition in violation of California Business and Professions Code Section 17200.  As a direct and proximate result of their conduct, TriPharma has been harmed in an amount according to proof, and will suffer further, irreparable injury unless the requested relief is granted.

116.    TriPharma is informed and believes, and on that basis alleges, that Defendants' conduct was unlawful, unfair and/or fraudulent and has the potential to cause confusion in the marketplace.

117.    TriPharma requests that the court enter such orders as may be necessary to restore to it all sums which Defendants wrongfully acquired by means of unfair and fraudulent conduct, as provided in Business and Professions Code Section 17203 and 17535, and for other appropriate relief.

118.    TriPharma requests that the court enter such orders as may be necessary to enjoin Defendants' false, fraudulent, and misleading labeling and advertising, as provided in Business and Professions Code Sections 17203 and 17535, and for other appropriate relief, including attorneys fees pursuant to, inter alia, CCP Section 1021.5, including restitution and disgorgement of profits, injunctive relief from Defendants.  TriPharma additionally requests that such funds be impounded by the Court or that an asset freeze or constructive trust be imposed upon such revenues and profits to avoid dissipation and/or fraudulent transfer of concealment of such monies by Defendants.  TriPharma may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### DEMAND/PRAYER FOR RELIEF

TriPharma prays for an order and judgment thereon as to each Defendant, and all of them, jointly and severally, as follows:

1.    For an order and judgment thereon that the purchase of the 892 Patent

**FIRST AMENDED COMPLAINT**